■ MARY LYNCH et al., Appellants, v EDWARD FORD et al., Respondents. —In a negligence action, *inter alia,* to recover damages for personal injuries, plaintiffs appeal from a judgment of the Supreme Court, Westchester County, entered April 2, 1976, which is in favor of defendants and against them, upon a jury verdict. Judgment reversed, on the law and in the interest of justice, and new trial granted, with costs to abide the event. On the evening of June 24, 1968 the plaintiff Mary Lynch was driving her automobile in a southerly direction in the right-hand lane of the Saw Mill River Parkway. At the trial she testified that she had downshifted in order to maintain distance between herself and the preceding car, which had slowed in preparation to exit the parkway, and she thought that she had not applied her brakes. At that time, her automobile was hit in the rear. She felt two impacts coming very close together. The theory of plaintiffs' case was that the Lynch car was struck by a car owned and operated by the defendants Ford, which had, in turn, been struck in the rear by a car owned and operated by the defendants Gray, and propelled forward to strike the Lynch vehicle for a second time. The Fords claimed that Mrs. Lynch had made a sudden stop, causing the three cars to come together. The position of the Grays was that their car had never collided with either of the other two vehicles. It was within this context of hotly contested factual issues that the defendants were permitted, over continued and vigorous objections, to examine the plaintiff William Lynch on a collateral issue involving insurance coverage. Mr. Lynch had not been a witness to the accident; however, he was employed as a claims examiner for an insurance company. Presumably because of his expertise in this field, it was Mr. Lynch who, on the day following the accident, prepared an MV-104 accident report which his wife signed. Within 90 days after the accident Mr. Lynch, in the belief that the

Ford vehicle was uninsured, made a claim against his insurer on the uninsured motorist endorsement of his policy. About four months after the accident he prepared and filed a second MV-104 accident report which his wife signed. These accident reports differed in the respect that while the first report noted that three cars had been involved in the accident, the second mentioned only the Lynch and Ford vehicles. The defendants contended that in order for Mr. Lynch to make a successful uninsured motorist claim, he had to demonstrate to his carrier that there was no other insurance available to him as a claimant from any third party (we note that there is no such requirement; see *Matter of Powers [Continental Ins. Co.],* 29 AD2d 1041; *Matter of Klosowsky [Liberty Mut. Ins. Co.],* 56 Misc 2d 649, 650). In sum, the defendants sought to inquire into the discrepancy between the two accident reports in order to impeach Mr. Lynch's credibility by showing that he was willing to conceal the existence of the insured Gray vehicle to recover on his uninsured motorist endorsement. The cross-examination concerning the inconsistencies between the two motor vehicle accident reports and the motivation of the plaintiff husband in preparing them involves a conflict in the rules of evidence. It is the general rule that in an accident case, evidence pertaining to insurance is inadmissible and an improper subject of cross-examination *(Simpson v Foundation Co.,* 201 NY 479, 490; Ann., 4 ALR 2d 761, § 3, p 767). On the other hand, it is well settled that the prior inconsistent statements of a party are admissible for the purpose of impeaching his credibility (Richardson, Evidence [Prince-10th ed], § 501). Evidence may be incompetent for one purpose but entirely proper and admissible for another, unless the risk of confusion or prejudice is so great as to outweigh the advantage in receiving it (see 29 Am Jur 2d, Evidence, § 262; *Nappi v Falcon Truck Renting Corp.,* 286 App Div 123, 126-127). Some inquiry as to the inconsistencies in the motor vehicle accident reports prepared by the plaintiff husband was, therefore, proper. However, it is our view that the trial court abused its discretion in failing to limit the extended and broad ranging cross-examination which appears in this record. Such cross-examination unduly stressed the highly prejudicial collateral issue of insurance coverage to the jury (see Richardson, Evidence [Prince-10th ed], § 169; see, also, *Doyle v Dapolito,* 20 AD2d 318, 321) and improperly and unnecessarily informed the jury that the defendants Gray were insured *(Simpson v Foundation Co.,* 201 NY 479, 480; *Wisniewski v Jem Novelty Corp.,* 22 AD2d 10). Similarly, in unwarrantable fashion, it informed the jury that plaintiffs had made a claim on their own policy for uninsured motorist benefits and had received a payment on such claim, but it failed to apprise the jurors that because of the withdrawal of the disclaimer, a refund of those benefits would have to be made out of any recovery. A reversal and new trial are required because this was a close case and it is impossible to say that the prejudicial effect of the foregoing errors did not influence the jury's verdict (see *Simpson v Foundation Co.,* 201 NY 479, 490, *supra).* Upon the retrial, the scope of cross-examination on this issue should be restricted in accordance with the foregoing guidelines and the court should clearly instruct the jury that such evidence is admitted solely for the purpose of impeaching credibility and that the existence or nonexistence of insurance, in and of itself, is irrelevant to the issue of liability in the case. In addition, it was error to require Mr. Lynch, over objection, to express his opinion as to the relative fault of the parties as such fault contributed to the happening of the accident, especially as the evidence established that he was not a witness to the occurrence (see *Crofut*

*v Brooklyn Ferry Co.,* 36 Barb 201, 209). Damiani, J. P., Titone, Suozzi and O'Connor, JJ., concur; Hawkins, J., dissents and votes to affirm the judgment.