# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**430**

**CA 12-01413**

PRESENT: SCUDDER, P.J., PERADOTTO, LINDLEY, VALENTINO, AND MARTOCHE, JJ.

---

UTICA MUTUAL INSURANCE COMPANY, EXPRESSWAY
AUTO AUCTION, INC. AND EDWARD MILLER,
PLAINTIFFS-RESPONDENTS,

V                                                                MEMORANDUM AND ORDER

ERIE INSURANCE COMPANY,
DEFENDANT-APPELLANT.
(APPEAL NO. 1.)

---

HURWITZ & FINE, P.C., BUFFALO (KATHERINE A. FIJAL OF COUNSEL), FOR
DEFENDANT-APPELLANT.

LESTER SCHWAB KATZ & DWYER, LLP, NEW YORK CITY (JOSHUA C. ZIMRING OF
COUNSEL), FOR PLAINTIFFS-RESPONDENTS.

---

Appeal from a judgment (denominated order) of the Supreme Court,
Oneida County (David A. Murad, J.), entered February 6, 2012 in a
declaratory judgment action. The judgment, among other things, granted
the motion of plaintiffs for summary judgment.

It is hereby ORDERED that the judgment so appealed from is
unanimously reversed on the law without costs, plaintiffs' motion is
denied, defendant's cross motion is granted, and judgment is granted in
favor of defendant as follows:

It is ADJUDGED and DECLARED that plaintiff Utica Mutual
Insurance Company and defendant are both excess insurers with
regard to the underlying action, that the excess coverage
clauses in each policy cancel out each other, and that each
insurer is obligated to pay on a pro rata basis the costs of
defending and indemnifying plaintiffs Expressway Auto Auction,
Inc. and Edward Miller in the underlying action.

Memorandum: The consolidated appeals in this declaratory judgment
action arise from a dispute between plaintiff Utica Mutual Insurance
Company (Utica) and defendant, Erie Insurance Company (Erie), over the
priority of insurance coverage for injuries sustained by the plaintiff
in the underlying negligence action. In appeal No. 1, Erie appeals from
a judgment granting plaintiffs' motion for summary judgment, denying
Erie's cross motion for summary judgment, and granting judgment
declaring that Erie is the primary insurer and that Utica is an excess
carrier. The judgment also directed Erie to pay Utica $250,000, and to
reimburse Utica for two-thirds of Utica's defense costs in the

underlying action.  In appeal No. 2, Erie appeals from a judgment subsequently entered against Erie in favor of Utica in the amount of $260,803, including defense costs and interest.  We reverse the judgment in appeal No. 1 and grant Erie's cross motion for summary judgment seeking a declaration that Erie and Utica are co-excess carriers.  In view of our determination in appeal No. 1, we vacate the money judgment in appeal No. 2.

The injured plaintiff in the underlying action, Joseph Bunk (Bunk), was attending an automobile auction held on premises owned by plaintiff Expressway Auto Auction, Inc. (Expressway), a defendant in the underlying action, which was insured by Utica with coverage of $1,000,000.  Prior to that date, Erie's insured, Twin Tier Auto Transport (Twin Tier), delivered its 1999 Dodge van to Expressway to be auctioned.  Erie's policy provided coverage of $500,000.  Bunk was injured when he was struck by the van, which was being driven by plaintiff Edward Miller, an employee of Expressway and also a defendant in the underlying action, who had permission from Twin Tier to operate the vehicle.  Erie's coverage was thus invoked, inasmuch as its policy covered anyone using a vehicle owned by Twin Tier with Twin Tier's permission.  The underlying action against Miller and Expressway eventually settled for $750,000, with Utica paying $500,000 to Bunk and Erie paying the remaining $250,000.  As part of the settlement, the parties reserved their right to litigate their dispute over insurance coverage in this action.  The central issue on appeal is whether Erie is a primary insurer of Expressway and Miller rather than a co-excess insurer with Utica.  There is no dispute that Utica provides only excess coverage.

In resolving disputes between insurers, "we first look to the language of the applicable policies" (*Fieldston Prop. Owners Assn., Inc. v Hermitage Ins. Co., Inc.*, 16 NY3d 257, 264), and we note that New York law "recognize[s] the right of each insurer to rely upon the terms of its own contract with its insured" (*State Farm Fire & Cas. Co. v LiMauro*, 65 NY2d 369, 373; *see Sport Rock Intl., Inc. v American Cas. Co. of Reading, Pa.*, 65 AD3d 12, 21).  "[W]here there are multiple policies covering the same risk, and each generally purports to be excess to the other, the excess coverage clauses are held to cancel out each other and each insurer contributes in proportion to its [policy] limit," unless to do so would distort the plain meaning of the policies (*Lumbermens Mut. Cas. Co. v Allstate Ins. Co.*, 51 NY2d 651, 655; *see Federal Ins. Co. v Atlantic Natl. Ins. Co.*, 25 NY2d 71, 75-76; *Cheektowaga Cent. Sch. Dist. v Burlington Ins. Co.*, 32 AD3d 1265, 1267-1268).  By contrast, "if one party's policy is primary with respect to the other policy, then the party issuing the primary policy must pay up to the limits of its policy before the excess coverage becomes effective" (*Osorio v Kenart Realty, Inc.*, 48 AD3d 650, 653; *see Great N. Ins. Co. v Mount Vernon Fire Ins. Co.*, 92 NY2d 682, 686-687; *Stout v 1 E. 66th St. Corp.*, 90 AD3d 898, 904).

Here, we conclude that Supreme Court erred in determining that the "other insurance" clause of the policy issued by Erie to Twin Tier is ambiguous and thus unenforceable.  The clause reads in relevant part: "This policy provides primary insurance for any owned auto while used by

anyone we protect.  If an owned auto is being used in the course of *your garage operations*, this policy will provide excess insurance over all other available insurance coverage" (emphasis added).  The term "your" is defined in the policy as "the person(s) or organization(s) named in Item 1 on the Declarations," i.e., Twin Tier, while the term "garage operations" is defined as including, inter alia, "the ownership, maintenance or use of autos we insure shown on the Declarations," i.e., the van that struck Bunk.

The court determined that the clause is ambiguous because there is no separate definition for the phrase "your garage operations."  We perceive no such ambiguity.  Given the definitions of the terms "your" and "garage operations" in the policy, the phrase "your garage operations" unambiguously means the garage operations of the insured, Twin Tier.  Because the claims arising from the subject accident resulted from Twin Tier's ownership of the vehicle, which was delivered to Expressway to be auctioned, the accident occurred in the course of Twin Tier's garage operations as defined in the policy (*see generally Hartford Ins. Group v Rubinshteyn*, 66 NY2d 732, 733-734, *rearg denied* 67 NY2d 647; *Lancer Ins. Co. v Marine Motor Sales, Inc.*, 84 AD3d 1318, 1321-1322, *lv denied* 17 NY3d 714).  It thus follows that, pursuant to the "other insurance" clause in question, Erie provides excess coverage.

We reject plaintiffs' alternative contention that the "other insurance" clause is ambiguous because, considering the policy's broad definition of "garage operations," Erie's coverage would *always* be excess despite the reference to primary coverage.  In support of that contention, plaintiffs rely on the general rule of construction that courts should interpret an insurance policy " 'in a way that affords a fair meaning to all of the language employed by the parties in the contract and *leaves no provision without force and effect*' " (*Raymond Corp. v Natl. Union Fire Ins. Co. of Pittsburgh, Pa.*, 5 NY3d 157, 162, *rearg denied* 5 NY3d 825 [emphasis added], quoting *Consolidated Edison Co. of N.Y. v Allstate Ins. Co.*, 98 NY2d 208, 221-222).  Contrary to the underlying premise of plaintiffs' contention, however, there is a scenario whereby Erie can provide primary coverage under its policy.  As noted, the "other insurance" clause states that Erie will provide "excess insurance over all other available insurance coverage."  It follows that Erie's coverage will be primary if there is no other available insurance coverage.

Inasmuch as both the Utica and Erie policies purport to be excess to the other with respect to the injuries sustained by the injured plaintiff in the underlying action, the excess coverage clauses cancel out each other and each insurer must contribute in proportion to its policy limit (*see Great N. Ins. Co.*, 92 NY2d at 687; *Lumbermens Mut. Cas. Co.*, 51 NY2d at 655; *Matter of Allstate Ins. Co. v Bieder*, 212 AD2d 693, 693-694).  Because Utica provides two-thirds of the available coverage, it must pay two-thirds of the settlement amount, or $500,000, with Erie paying the balance.  Utica is also responsible for two-thirds

of the defense costs (*see Great N. Ins. Co.*, 92 NY2d at 687).

Entered:   June 14, 2013                              Frances E. Cafarell
                                                      Clerk of the Court